to H. Thompson, as trustee for Richard Caton, and to John Breckenridge. At law there is a material distinction between these titles, but not in equity. Under both deeds the equitable interest of the parties may be the same. In the original bill it is stated, that Holmes acquired the title and held it for the use of the complainants. Such an alteration, therefore, in the bill, as states the deed was made to them by Short instead of its having been made to Holmes for their use, cannot be considered as the assertion of a new title, or the commencement of a new suit. The case, however, is different so far as it respects the interests of the complainants, under the decree against the heirs of Breckenridge. A conveyance from them to the complainants was decreed on the ground that the consideration had, in part, failed. In the deed to Breckenridge there was no reservation or condition, no agreement to reconvey on any contingency. It was only by the aid of a court of chancery, that the right of the complainants could be established and enforced against a part of the land. Until the decree which cancelled the deed was pronounced, the complainants possessed no claim in law or equity to the land in question which could be rendered effective against the claim of the defendants. To the decree, therefore, must the complainants look for the origin of their title. This decree was obtained in November, 1822, and for the first time a claim is set up under it in the amended bill. This must be considered as the assertion of a title distinct from that which is set out in the original bill; and, as regards the statute of limitations, must be considered as the commencement of a suit. It follows, therefore, that the title to the land conveyed to the complainants, under the decree against the heirs of Breckenridge, in so far as it covers the land which has been occupied by the defendants, and those under whom they claim, adversely to the complainants for twenty years before the filing of the amended bill, in law and equity is vested in the defendants. The residue of the tract claimed by the defendants within the entry of Voss, must be relinquished to the complainants, as they hold the prior equity.

At a subsequent term surveys having been executed in accordance with this opinion, a final decree was entered.

[NOTE. From this decree the complainants appealed to the supreme court, where the decision was affirmed in an opinion by Mr. Justice McLean. 7 Pet. (32 U. S.) 171. It was held that the variation of 40 poles from the distance called for in Patton's entry was as little as could be expected under the circumstances. All the law requires is that the beginning corner could be found without difficulty. The evidence established prima facie that the tree called for was marked when the entry was made. In Kentucky, surplus land in a survey does not vitiate it. "The right asserted under the survey of Voss must be limited by the valid entries under which a part of the defendants claim to the calls of the entry which shall cover the quantity of acres that the surveyor purported to convey." Where there is no object called for to control a rectangular figure, that form shall be given to the survey.]

HOLMES (UNITED STATES v.). See Cases Nos. 15,382 and 15,383.

HOLMES (WALLACE v.). See Case No. 17,-100.

HOLMES (WAYNE v.). See Case No. 17,303.

HOLMES, The LUCY C. See Case No. 8,-597.

## Case No. 6,646.

### In re HOLT.

### [3 N. B. R. 241 (Quarto, 58).] [1]

### District Court, S. D. New York. Sept. 20, 1869.

BANKRUPTCY—EXAMINATION OF BANKRUPT.

Where bankrupt is upon his examination and fails to answer proper questions propounded, he will be compelled to answer by the court.

By the Register:

I, Isaac Dayton, one of the registers in bankruptcy of this court, in the absence of Register James F. Dwight, sitting and acting in his absence for him, do hereby certify that pursuant to an order made by me on the 7th day of September, A. D. 1869, Asa Holt, Jr., the bankrupt above named, was examined on oath, September 9th, 1869, before the undersigned, under and as required by the 26th section of the bankrupt act of March, 1867 [14 Stat. 529]. And I hereby certify that, in the course of said examination, the questions arose which are stated and set forth in the examination hereto annexed, which questions are hereby, at the request of H. C. Bennett, attorney for examining and contesting creditors herein, certified to the honorable the judge of the district court for his decision thereon.

Examination of Asa Holt, Jr., the bankrupt above named, taken pursuant to an order made in this bankruptcy court: "Q. 1. Mr. Holt, it appears your petition was filed the 19th day of December, 1868? (Question withdrawn.) Q. 2. About how much did you claim from Mr. Schell? A. I only claim what Mr. McIntire said it should be, which was ninety-six thousand dollars for three of us, myself, Mr. McIntire, and Mr. Davis. Q. 3. What was your proportion of it? A. One-third of the amount. Q. 4. When did that claim arise? A. In 1863, 1864, and 1865; 1864 and 1865. I think. Q. 5. Why did you not put it among your assets in your schedules? A. Because it had been settled by an irrevocable power of attorney given to Stephen T. Russell. Q. 6. When? A. In January, 1866. Q. 7. Did you know that statements had been made at the time you were in consultation with Mr. Rudd? A. Yes. I knew that statements had been made. Q. 8. You subsequently took a consultation with Mr.

[1] [Reprinted by permission.]

Rudd, and had a settlement with Mr. Schell, did you not? A. I did not. Q. 9. Did Mr. Schell pay you subsequently to this consultation two thousand dollars in cash, and three thousand dollars in acceptances? A. He loaned me that sum of money; he did not pay me at all. Q. 10. Just previously to the delivery of this five thousand dollars which I have spoken of, did you not execute and deliver to Mr. Schell a release? A. I did. Q. 11. Was that a general release? A. Yes. Q. 12. Did not Mr. Schell make the execution of this release the condition on which he would deliver to you this five thousand dollars? A. No, sir. Q. 13. Did he not refuse to deliver to you that five thousand dollars until you executed and delivered that release? A. There was no amount of money specified at all, nor any consideration. Q. 14. Question repeated. A. There was no amount of money nor consideration mentioned at all. Q. 15. Question repeated. A. He refused to answer me or have conversation with me, or business with me till that was settled. Q. 16. Question repeated. A. I can't answer any differently. Q. 17. Question repeated. The register considers the question has not been answered, and so states to the bankrupt. Witness gives same answer."

BLATCHFORD, District Judge. The witness has not answered question 13. From his answer to question 12, it is apparent that there can be no difficulty in his answering question 13 categorically. He must do so.

HOLT (BYRNE v.). See Case No. 2,272.

## Case No. 6,647.

### HOLT et al. v. DORSEY.

[1 Wash. C. C. 396.] [1]

Circuit Court, D. Pennsylvania. April Term, 1806.

#### PRINCIPAL AND AGENT—PAYMENT TO AGENT.

A and B shipped a cargo of goods for C, but consigned them to D, the partner of E. Before the arrival of the goods, D died. C became bankrupt, and the defendant, under a power of attorney from E, took possession of them, sold them, and remitted part of the proceeds to E; at the same time informing A and B of his having taken possession of the goods; and when he remitted in part their proceeds to E, he advised A and B of such remittances, who approved of the whole of his proceedings. *Held*, that the defendant did not become the agent of the shippers, but was the agent of E; and that any remittances made to E, of which advice was not given by the defendant to A and B, that they were for the proceeds of the goods, were not a payment to A and B.

[Cited in Winship v. Bank of U. S., 5 Pet. (30 U. S.) 568.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

The plaintiffs [Holt & Co.] living in an interior part of England, in 1799, they shipped a cargo of goods, intended for a merchant in Baltimore; but to secure themselves, in case of any accident happening to the person so intended, they sent them to order; and a Mr. Willis, of that town, the partner of M'Call Medford of London, was authorized to receive them. At the same time, Medford, the friend of the plaintiffs, but who was not authorized thereto, by the plaintiffs, sent out a power of attorney, to the defendant [John Dorsey] to act in this business, if necessary. Before the arrival of the goods, Willis, the agent of the plaintiffs, died; and the person on whose account the goods were sent, having become bankrupt, the defendant took possession of the goods, and brought them to Philadelphia, where a part of them were disposed of. He informed the plaintiffs what he had done; and received their approbation and thanks, recognising the act of Medford, in procuring his interference upon the event, which had taken place, of the death of Willis, their agent. The defendant made remittances, through Medford, to the plaintiffs, which the plaintiffs received. The goods not sold, were delivered over to Mr. Lyle, the agent of the plaintiffs, in this country. The defendant corresponded with the plaintiffs, respecting these goods, and promised to remit the proceeds to them; and when he did remit, through Medford, he informed Medford, as well as the plaintiffs, on what account it was made. The defendant was the agent of Medford, in other transactions, and remitted them large sums of money, generally without making an appropriation of them; except in the cases above mentioned, where specific sums were remitted for the plaintiffs. A balance still remained due to the plaintiffs, which had not been remitted to the plaintiffs, or to Medford, on their account, by any specific appropriation. The plaintiffs, in a letter to the defendant, requested him to remit either to them, or to Medford, for them. It appears, by an award made in a dispute between the defendant and Medford, that a balance was due from the former, to the latter, of a larger sum than is now claimed by the plaintiffs, which the defendant was adjudged to pay, provided he received a full indemnification against the claim of the plaintiffs, for a part of that sum. The referees were of opinion, that the defendant was liable to Medford, and he to the Holts. Medford became a bankrupt two or three years ago.

It was argued by the plaintiffs' counsel, that if the defendant remitted the sum now claimed to Medford, unless he ordered the same to be paid over to the plaintiffs, the plaintiffs were not bound by it. That it appearing, that the defendant was a debtor to Medford, unless such an application was made, Medford had a right, which it appears he exercised, to apply the same to his own debt. That the defendant was a mere volunteer in this business, having been appointed